# Straub Brewing Company *v.* Bonistalli & Bisi, Appellants.

*Contract—Agency—Ratification.*

A contract made by a bookkeeper as agent of defendants will be binding if acted upon and ratified by defendants.

*Charge of court—Adequacy.*

A verdict for plaintiff will not be disturbed where the entire tenor of the charge was to the effect that the burden of proof was on the plaintiff to prove the disputed part of the contract; where the charge of the court viewed as a whole was as favorable to the defendants as they were entitled to have it under the evidence; and where the excerpts which form the assignments of error, even when read apart from the remainder of the charge, show a due regard for the rights of the defendants.

Argued May 7, 1897. Appeal, No. 8, April T., 1897, by defendants, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1894, No. 506, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit. Before STOWE, P. J.

The facts sufficiently appear from the charge:

These cases require separate consideration, just as much as though they were tried without reference to one another. They all depend, however, upon the one main matter. There is nothing to indicate that the defendants are liable to the plaintiff in any of these cases except as it is based upon an alleged contract made by the plaintiff with Mrs. Bonistalli. According to their testimony, it seems it was made when she was bookkeeper of one of these firms, and not a partner. The contract of a bookkeeper cannot bind a firm, unless it is made with the knowledge and consent of the partnership, or having been made, they have knowledge of the fact and act upon it. Your bookkeeper may make as many contracts connected with your business as he pleases, and you are not bound unless you have knowledge of the fact and acquiesce in it. He has no business to do it unless you give him instructions or authority to do it, but if without instructions he makes a contract and then informs you of it, or

the circumstances indicate to the jury, when it comes before a jury, that you had knowledge that such a contract had been made and acted upon it, that would be sufficient to justify the jury in finding that you were responsible upon such a contract.

Mrs. Bonistalli denies that she ever did make such a contract, from first to last. You will remember she was the bookkeeper for the first of these firms, continued bookkeeper for the second firm, and then became a partner and perhaps bookkeeper; at all events, a partner in the last firm. Of course anything she did in the line of business when she was a member of the firm would bind her firm, but it would not have any bearing upon what was done before. [In other words, any contract she had made when she was not a member of the firm would not bind the other firm of which she was bookkeeper, unless the evidence showed reasonably and fairly that the members of the firm knew and acquiesced and acted upon the contract that she had made, in the absence of evidence that she was authorized to make it in the first place, of which there is not a particle in this case. The evidence in this case is of such a character that I cannot myself undertake to say, as a matter of law, that you should not find a verdict against any of the defendants. That is for you to say.] [1] Certainly the testimony is very vague, apart from the contract itself, very vague as to anything that would create a liability upon the part of these defendants.

[There is evidence to show—which of itself would amount to nothing, unless there was a contract express or implied, made or acted upon—that the plaintiff demanded of the defendants, from time to time, an account of their kegs or packages], [2] and demanded their return, perhaps intimating directly or indirectly that the defendants were responsible for them. That would amount to nothing of itself. Because I make a claim against you is no evidence that I have one, except as you may act upon that, or your conduct at the time I make the demand may indicate that you acquiesce in it or recognize the fact that the contract was as I claim it to be. I might go to any gentleman upon the street and say I wanted him to pay the thousand dollars he owed me, although I may never have seen the man before. That would be no evidence that he owed me the money, but if he would hesitate and say, I will see you again, or we will settle that hereafter, or do some act indicating that he ac-

quiesced in my suggestion, it would be a matter for the jury to consider, if it came before a jury.

Upon these matters, as I said before, if you believe that Mrs. Bonistalli did not make this contract, then your verdict should be for the defendants clear through, because if this contract was not made by somebody—and she is the only one that is alleged to have made it—the plaintiff has no claim whatever. There is nothing to indicate that outside of this contract the defendants were responsible for these packages. It is true they got them; they could not get the beer very well without its being in a package; but where a man buys an article the presumption is the package is his. These witnesses are very clear that it was not understood that the packages were to be the property of the purchaser, but were to be returned. But if there was no contract as to who was to return them, the parties who sold the beer to these defendants would have to look out for the packages themselves. If the defendants saw fit to interest themselves and return them, that was a voluntary act upon their part, and if they did not do it they would not be responsible.

There is, however, another element in these cases that would make whichever of these firms existed at the time the particular act was done, responsible, to say the least of it, for the packages that were used in the way claimed. [There is evidence, whether you believe it or not, that many of these packages were burned and destroyed.] [3] Now, it is clear that they did not belong to the defendants; the evidence is clear throughout that the defendants did not own these packages, whether they were bound to return them or not. They would only be bound to return them by reason of a contract, but whether there was a contract or not, if they undertook to destroy the property of the plaintiff, and burned it up, they would be liable to the extent that they did that. It was the plaintiff's property, and if the defendants used it, or their agents, with their authority or consent, to put pickles in, or burned it, whatever was destroyed or used in that way, they would to that extent be responsible for, but not beyond that unless there was a contract.

I do not see that I can say very much more. There are claims against three firms, one against Frank Bonistalli and Ernest Bisi, commencing on May 2, 1892, and ending August

19, 1892; one against Ernest Bisi, commencing August 25, 1892, and terminating May 1, 1893; and one against Mrs. Bonistalli and Bisi, commencing May 1, 1893, and ending June 1, 1893. If you find a verdict for the plaintiff in any of these cases you will have to try and discriminate how many of these packages were lost or not returned during the existence of each particular partnership. You cannot take the whole number of packages, in this view of the case, supposing some of these defendants are responsible for it, and divide by three. Nor can you take the plaintiff's claim as evidence of the amount that was failed to be returned from time to time, unless the evidence justifies you in doing it; and the evidence upon that matter is extremely vague and uncertain. If you believe there was a contract to pay for these packages for which each of these firms was responsible, then, of course, when the beer was delivered the parties would have a reasonable time to dispose of the beer, and it would be their duty to return the package. As to that, it would be a reasonable time, and the defendants in that case would be prima facie liable for every package they got. Then it would devolve upon them to satisfy you how many had been returned, but as the plaintiff has undertaken to go into evidence showing how many were returned and how many were not returned, and how many were probably left in the hands of the parties, [it is for you to say as best you can under this, to my mind, very uncertain testimony, how many packages Bonistalli & Bisi got and did not return, how many E. Bisi got and did not return, and how many E. Bonistalli & Bisi got and did not return]. [4]

Unless the jury can come to a reasonably satisfactory conclusion as to how much was failed to be returned by each of these particular partnerships, they are in duty bound to find a verdict in each particular case for the defendant, because of a failure to satisfy the jury fairly and reasonably as to the amounts each of these defendants was responsible for, assuming they were responsible for anything. As I said before, if you believe Mrs. Bonistalli, the plaintiff has no right to recover in any of these cases. [If you believe plaintiff's testimony, then you are to consider how far each of these firms, succeeding one another as they did, had knowledge of and acted upon the arrangement she is said to have made. According to that view of the case,

if they knew it and bought this beer with that understanding, whether Mrs. Bonistalli made the contract without their knowledge or with it, if they understood after it was made that that was the arrangement, and they bought beer in reference to that arrangement, they were bound to return the packages.] [5] If they failed to return them they are now bound to pay for the value of those packages which were received and ought to have been returned.

Of course a reasonable time should be allowed before interest should run, but after three or four months, at the outside, the probabilities are that they would be entitled to interest. All we can say is that they would be entitled to interest upon the value of those articles after the expiration of a reasonable time, particularly after notice had been given to return them, if a reasonable time had been allowed to do so under that view of the transaction. Of course these defendants got a lot of beer and sent it to Rochester, Altoona and other places. They had to send it in the packages in which it was received, and a reasonable time should be allowed those parties to dispose of the beer, if that was the custom, and I suppose it would be, unless they were engaged in the bottling business. They could not get a number of kegs of beer and return them tomorrow; they probably could within a month or two. If the jury come to the question of interest, they should allow a reasonable time before they add interest to plaintiff's claim, if they see fit to add interest at all, which is a matter for their consideration under all the evidence, as to whether they think the plaintiff is entitled to recover.

As I said before, the burden of proof is upon the plaintiff to make out his claim. This matter was very carelessly done if it was done as claimed by the plaintiff. If the defendants are liable, it was still more carelessly done on their part. They do not seem to have kept any account.. They do not seem, by their own admission, to have paid any particular attention to it. They did make an effort to return some of these packages, but the whole thing, from first to last, does not appear to be consistent with an ordinarily reasonably strict business proceeding. The case is for you; it is one of those matters that is for the jury, and the law is simply as as I have stated. [If that contract was made, then the defendants are liable, each

of these separate firms so far as they had knowledge and acted upon the contract as made.] [6]   If it was not made, as the defendants say it was not, then the plaintiff has no claim whatever; they have failed to look after their packages, which was their own business, and they cannot hold the defendants responsible for it.

Verdict and judgment for plaintiff for $869.87½.   Defendants appealed.

*Errors assigned* were (1–6) portions of the judge's charge, reciting same.

*A. Israel,* of *Cohen & Israel,* for appellants.

*E. G. Ferguson,* with him *J. S. Ferguson,* for appellee.

OPINION BY SMITH, J., July 23, 1897 :

Frank Bonistalli and Ernest Bisi trading under the firm name of Bonistalli and Bisi were engaged in the liquor business in the city of Pittsburg from May 2, 1892, until August 19, 1892.   The partnership was then dissolved and Bisi having acquired the interest of Bonistalli, continued the business in his own name until May 1, 1893.   The Straub Brewing Co. supplied a large quantity of beer to Bonistalli & Bisi and to Ernest Bisi during the periods mentioned, under a contract made between Herman Straub on behalf of the brewing company and Mrs. Bonistalli wife of Frank on behalf of Bonistalli and Bisi, she being then in the employ of the firm as bookkeeper.   Straub contended that it was then agreed, as part of the contract for the sale of beer, that the firm would return the empty kegs or pay their value to the brewing company, and that this agreement was continued with Bisi during the time he carried on the business for himself.   Mrs. Bonistalli denied that there was any agreement for the return of the kegs or to pay for those not returned.   The brewing company, claiming that a large number of kegs which had been delivered to the firm, and also to Bisi, had not been returned, brought separate actions to recover their value, and by agreement these suits were tried together.   The evidence showed the delivery of a large number of kegs to both of the defendants, and the brewing company's books showed that some were returned.   There was also testimony showing

BREWING CO. v. BONISTALLI & BISI.

that the defendants used empty kegs of the brewing company in their macaroni business, and that many had been burned by them. The kegs were shown to be worth from $1.25 to $1.50 each, about equal to the cost of the beer they contained. The court charged the jury that : " The contract of a bookkeeper cannot bind a firm, unless it is made with the knowledge and consent of the partnership, or, having been made, they have knowledge of the fact and act upon it." And the jury were further instructed, in substance that, in order to recover, the plaintiff must show that the agreement under which the parties dealt bound the defendants to return or pay for the empty kegs, and that the defendants knew this and had accepted and ratified it as part of their undertaking. The entire tenor of the charge was to the effect that the burden of proof was on the plaintiff to prove the disputed part of the contract, its breach, and the number and value of the kegs which each defendant had failed to return. The jury were told that " the testimony is very vague, apart from the contract itself, very vague as to anything that would create a liability upon the part of these defendants." Viewed as a whole the charge of the court was certainly as favorable to the defendants as they were entitled to have it under the evidence. The excerpts from it which form the six assignments of error, even when read apart from the remainder of the charge, show a due regard for the rights of the defendants. Considered separately, these excerpts disclose nothing to warrant their selection as subjects for assignments of error, and the judgment might well be affirmed for the reason that the assignments on their face show no cause for complaint. When read in their proper connections they serve to complete a charge of which the appellants ought not to complain. The case presented questions of fact only and these were determined by the jury under adequate instructions, without requests from either party. The evidence was sufficient to justify the jury in finding that the contract was made as alleged by the brewing company and had been ratified and acted upon by the defendants. Further discussion by this court is unnecessary.

The assignments of error are overruled and the judgment is affirmed.